**MICROVOTE CORPORATION**

v.

**MONTGOMERY COUNTY, et al.**

**Civil Action No. 96–4738.**

United States District Court,
E.D. Pennsylvania.

Oct. 25, 1996.

---

Kenneth A. Murphy, Marc S. Raspanti, Miller Alfano & Raspanti, P.C., Philadelphia, PA, for Plaintiff.

Timothy T. Myers, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, for Defendants.

### MEMORANDUM

BARTLE, District Judge.

This court, a month or so ago, dismissed the amended complaint of Microvote Corporation ("Microvote") under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Now pending before the court is plaintiff's motion for reconsideration limited to the court's dismissal of Count II alleging unjust enrichment.

Microvote is a manufacturer and vendor of electronic voting machines. According to Count I of the amended complaint, the defendants Montgomery County ("County") and its Commissioners breached an oral contract for the purchase of 350 voting machines which Microvote had previously loaned to the County for the April 23, 1996 primary election. Those "loaner" machines had been made available for that one election without charge under a March 13, 1996 addendum to a 1994 written contract between the parties. Microvote sought $1,445,500 in damages. It further averred that defendants breached an oral contract to pay some $189,280 for training, education, and support Microvote provided prior to and during the primary election to ensure that the voting machines were used properly and efficiently.

In Count II of the amended complaint, Microvote sought recovery based on unjust enrichment or quantum meruit. It alleged that even if no oral contract existed, it was entitled to $1,445,500 in damages because the County inequitably "retained" the benefit derived from the use of the machines at this one primary election. There is no allegation that the County continued to utilize these "loaner" machines thereafter or that the Commissioners were still in possession of them. Microvote also asserted a quantum meruit claim for the $189,280 it expended for the training, education, and support services it supplied.[1]

The court dismissed both the oral contract and quantum meruit counts. We relied on the Pennsylvania County Code which requires that "all contracts for services and personal property where the amount thereof exceeds the sum of ten thousand ($10,000) shall be written. . . ." 16 Pa.Cons.Stat.Ann. § 1802(a). In further support we cited the per curiam decision of the Pennsylvania Supreme Court in *Patterson v. County of Delaware*, 404 Pa. 5, 171 A.2d 47 (1961), which directly controlled. There the plaintiff had rented certain excavating equipment and operators to Delaware County. Although the written contract terminated on September 1, 1959, plaintiff continued to work thereafter "at the oral request and upon the oral representations of the County's Superintendent of Parks." *Id.* When Delaware County refused to pay for these later services, plaintiff sued. The lower court dismissed plaintiff's complaint on the grounds that

---

**1.** Microvote pleaded that instead of buying additional voting machines from it, the County purchased them from Sequoia–Pacific, a Microvote competitor.

"the County is not liable under a contract which is not in writing" and that "there is no statutory authority permitting plaintiff to proceed on a theory or basis of quantum meruit." *Id.* 171 A.2d at 48. The Pennsylvania Supreme Court affirmed the dismissal. Citing the County Code, 16 Pa.Cons.Stat. Ann. § 1802(a),[2] the Court declared that "[s]ometimes, as in this case, it works a gross injustice, but it cannot be evaded, ignored, nullified or rewritten by a Court." *Id.* It specifically recognized the public policy underlying the County Code to protect the taxpayers of the Commonwealth with a statute of frauds. *See also, Davis, Murphy, Niemiec and Smith v. McNett,* —— Pa. Cmwlth. ——, 665 A.2d 1322 (1995), *appeal denied* 543 Pa. 718, 672 A.2d 310 (1996).

In its brief in support of its motion for reconsideration, Microvote cites for the first time the more recent Pennsylvania Supreme Court decision in *J.A. & W.A. Hess, Inc. v. Hazle Township,* 484 Pa. 628, 400 A.2d 1277 (1979). According to Microvote, it stands for the proposition that Montgomery County may be sued on a quantum meruit theory. The facts of that case are these. J.A. & W.A. Hess, Inc. ("Hess") had a written contract to supply Hazle Township ("Township") with some 100 tons of gravel to be used in the Township's roads. Thereafter, as a result of an oral request, Hess provided a total of 6,000 tons. The Township refused to pay for the excess.

The lower court dismissed the quantum meruit count on the ground that the Township had not followed the bidding and advertising procedures required under Pennsylvania law. The Supreme Court reversed. Without mentioning *Patterson,* it stated that "a quasi-contract recovery could be had against a municipality." *Hess,* 400 A.2d at 1279. The court explained that a governmental agency like a private individual should not be allowed to repudiate an obligation for a benefit received. More specifically, the court added, '... if the municipality does not restore the property which it has received, an implied obligation to make com-

pensatory payment for it arises.' *Id.* at 1279. While the Court's opinion is broadly written, it cautioned that a quantum meruit theory has its limits. It has no applicability where 'the municipal charter or the statutes prohibit the municipality from incurring any liability by implication.' *Id.*

A careful reading of *Patterson* and *Hess* demonstrates that they are not in conflict. *Hess* involved a township of the second class. *Patterson* involved a county. Significantly, while the Second Class Township Code, 53 Pa.Stat.Ann. §§ 65101 *et seq.,* requires certain bidding and advertising procedures before a contract may be let, it does *not* require the contract to be in writing. *Id.* at § 68102. In contrast, the provision of the County Code applicable here to Montgomery County specifically dictates that the contract be written. 16 Pa.Cons.Stat.Ann. § 1802.

We must assume that the Pennsylvania Supreme Court is familiar with its own precedents. If it thought *Patterson* to be at odds with the holding in *Hess,* it undoubtedly would have said so. Despite the expansive language in *Hess,* the Court's failure to cite *Patterson* can only mean that it did not consider the case to be pertinent to its analysis. Moreover, *Hess* stated that a quantum meruit theory was not viable where 'the municipal charter or statutes prohibit the municipality from incurring any liability by implication.' *Hess,* 400 A.2d at 1279. *Patterson* fits into this niche. It held that a statute, that is, the County Code, barred liability except under a written contract.

■ In this diversity action, it goes without saying that we are compelled to follow the law of Pennsylvania as "declared by its Legislature in a statute or by its highest court." *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). When no such controlling precedent of the state's highest court exists, we face the nettlesome problem of trying to predict what that court would do. In that situation, of course, we may look to decisions of state's intermediate appellate courts for guidance. *Commissioner of Internal Revenue v.*

---

**2.** Section 1802(a) was nearly identical in 1961, although the minimum dollar amount then was only $1,000.

*Bosch's Estate,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.,* 80 F.3d 90, 93 (3d Cir.1996). When, however, there is a decision of the Supreme Court of the Commonwealth which is directly on point, we are bound by that decision. We must follow the ruling of the highest court of Pennsylvania even if the precedent is old. We must do so even if we think that the state Supreme Court would change its mind were it ever to revisit the subject. *See, Erie,* 304 U.S. at 78, 58 S.Ct. at 822.

The Court of Appeals reiterated these principles in *Seese v. Volkswagenwerk, A.G.,* 648 F.2d 833 (3d Cir.), *cert. denied,* 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981), a diversity action involving the death of passengers in a Volkswagen van. North Carolina law was applicable. The Supreme Court of that state, more than fifteen years before, had refused to adopt strict liability under § 402A of the Restatement, Torts. The district court predicted that the North Carolina Supreme Court, if faced again with the issue, would reverse itself and follow the vast majority of the states in accepting § 402A. The Court of Appeals rejected this reasoning. It quoted the United States Supreme Court decision in *West v. AT & T,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940), to the effect that "a federal court must bow to the interpretation of the highest court of a state as 'the final arbiter of what is state law.'"[3] *Seese,* 648 F.2d at 838.

We find further support for this position in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). There the United States Supreme Court more recently admonished:

> If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this court the prerogative of overruling its own decisions.

We presume that we owe the same deference to state Supreme Courts when we sit in diversity cases as we owe to the United States Supreme Court in federal question cases.

█ In sum, *Patterson v. County of Delaware* is directly on point here. 404 Pa. 5, 171 A.2d 47 (1961). It has not been overruled and is binding upon us. Whatever the rule may be under other statutes or circumstances or whatever the Pennsylvania Supreme Court may do in the future, *Patterson* today prohibits a quantum meruit or unjust enrichment theory in an action against a county under the circumstances alleged here.[4] At least since that ruling vendors who do business with Pennsylvania counties have been on notice that a written contract must support their claims for payment. To act otherwise is to do so at one's peril.

█ Finally, it must be emphasized that the amended complaint did not assert that the County has retained the 350 voting machines in issue or that it put them in service other than for the April 23, 1996 primary. For that election, it was undisputed that Microvote had specifically agreed in writing to lend them to the County without charge. Moreover, *Hess* does not permit a suit on a quantum meruit theory if the municipality has restored the property to the owner. *Hess,* 400 A.2d at 1279. Thus, even if *Hess* were otherwise applicable, Microvote has not stated a viable quantum meruit claim for the County's use of the voting machines.

The motion of Microvote for reconsideration will be denied.

---

**3.** During the appeal to the Third Circuit, the North Carolina Supreme Court affirmed its decision not to adopt § 402A. *Smith v. Fiber Controls Corp.,* 300 N.C. 669, 268 S.E.2d 504 (1980).

**4.** We note that none of the justices of the Pennsylvania Supreme Court who participated in either *Patterson* or *Hess* currently sits on that court.