**BROWN & ROOT BRAUN, INC.;** Brown & Root, Inc.; Highlands Insurance Company; Riunione Adriatica Di Sicurta,

v.

**BOGAN INC.;** Home Insurance Company; Pennsylvania Manufacturers Alliance Corporation,

Brown & Root Braun, Inc.; Brown & Root, Inc.; Highlands Insurance Company; Riunione Adriatica Di Sicurta; *Sun Company, Inc.; *Sun Company, Inc. (R & M), Appellants *(Pursuant to F.R.A.P. 12(a)).

Nos. 00–4261, 01–1083.

United States Court of Appeals, Third Circuit.

Argued June 24, 2002.

Decided Dec. 5, 2002.

Peter A. McLaughlin, (Argued), C. Patrick Waites, Adams & Reese, LLP, Houston, TX, Debra A. Jensen, Galfand Berger, LLP, Philadelphia, PA, for Appellants.

Rex F. Brien, Jr., (Argued), Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for Appellee Home Insurance Company.

Before BECKER, Chief Judge, ALITO and AMBRO, Circuit Judges.

## OPINION

BECKER, Chief Judge.

This is an insurance coverage dispute. Plaintiffs Brown & Root Braun, Inc. ("B & R") brought suit in the District Court against defendant Home Insurance Co. ("Home") seeking indemnification for sums they had paid for personal injuries sustained by twelve individuals arising from a sludge storage tank explosion. Sun, the owner of the refinery where the explosion occurred, had contracted with B & R to act as the principal contractor for the project. B & R subcontracted the project to Mechanical Construction, Inc. ("MCI"), which in turn subcontracted the electrical work to Bogan, Inc. ("Bogan"). Bogan entered into a contract with Home, whereby Home agreed to insure Bogan for liability arising out of the project. Seven of the twelve individuals injured in the explosion were employees of Bogan. Sun, B & R, MCI and their insurers settled the personal injury suit by creating a $13 million fund for the employees. B & R sought indemnification from Home based on the theory that B & R is an "additional insured" under the insurance policy between Home and Bogan.

The District Court assumed that B & R was an additional insured under Bogan's policy, but nonetheless granted Home's motion for summary judgment, finding that B & R was not entitled to indemnification from Home because of the employee injury exclusion provision in the policy. B & R appeals. As Home stresses, the Pennsylvania Supreme Court concluded in *Pennsylvania Mfr.'s Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co.*, 426 Pa. 453, 456, 233 A.2d 548, 550 (1967) ("*PMA*"), that an employee injury exclusion provision similar to that in the Home policy barred additional insureds from seeking coverage under the policy, thus broadly interpreting the provision to apply to parties beyond the primary purchaser. Although B & R argues that the rule of *PMA* has been questioned by lower Pennsylvania courts and rejected by other states in favor of a "more modern" rule, we are bound by *PMA*. The District Court also held that neither the "severability clause" in the Home insurance policy nor the "cross-liability endorsement" in the Home insurance policy exempted B & R from the employee injury exclusion provision, which prevented B & R from seeking coverage from Home. We agree. In short, based upon our reading of Pennsylvania insurance law, we are constrained to affirm the grant of summary judgment for Home.

B & R submits that we should find that the District Court erred in granting summary judgment because there is a genuine issue of material fact as to whether Bogan implicitly agreed to indemnify B & R, based on the fact that MCI agreed to indemnify B & R and Bogan and MCI are allegedly owned as part of the same company. Since the agreement between MCI and B & R contained a provision requiring all of MCI's subcontractors to assume the obligation to indemnify B & R from MCI, B & R contends that we should presume that Bogan agreed to indemnify B & R because Bogan was aware of this obli-

gation. We conclude, however, that in the absence of any proof of an agreement between Bogan and B & R, a finding that Bogan should have been aware that it had an obligation to indemnify B & R does not bear on whether there was actually an indemnification agreement between Bogan and B & R.

This case also has an odd procedural twist. Sun moved for leave to join as a co-plaintiff in the case brought by B & R in the District Court. The District Court denied Sun's motion for joinder but ordered Sun to justify within five days why its claims against Home were any different from B & R's claims. Sun moved for reconsideration, and for clarification of the order, but the Court again denied relief. Sun asserts that the order requiring Sun to justify its remaining claims is a ruling on the merits against Sun. Sun maintains that since the District Court had just denied its motion for joinder and Sun was therefore not a party to the case between Home and B & R, the District Court lacked jurisdiction over Sun to issue an order that would affect its rights.

We conclude that, insofar as the District Court's order can be construed as a ruling against Sun on the merits, the District Court did not have jurisdiction over Sun because it became a non-party once the District Court denied the motion for joinder. Although we are not certain that the

District Court's order is a judgment on the merits, in order to obviate any potential claim that the District Court's order has *res judicata* effect against Sun, we will order vacatur of that sentence in the District Court's order that instructed Sun to justify its claims.

## I.

■ This litigation involves a commercial liability policy issued by Home to Bogan, under which Home and Bogan contracted for the former to insure the latter.[1] B & R contends that Bogan named B & R as an "additional insured" under its policy with Home, and that, as such, B & R is entitled to indemnification from Home for the money it paid into the settlement fund. The policy does not specifically mention B & R, but it states that "it is hereby understood and agreed that Additional Insureds are added on a blanket basis as shown on a Certificate of Insurance and as required by written contract." B & R contends that "[i]n recognition of its obligation, Bogan caused its insurance broker ... to issue two certificates of insurance naming B & R an additional insured under the policy. Further, Home accepted copies of the certificates and twice endorsed its policy to name B & R as Home's additional insured." Home responds that the certificates of insurance it issued only concerned work unrelated to the explosion incident.

---

1. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and is governed by the same standards that apply to the District Court in considering a motion for summary judgment. *Kline v. First Western Gov't Sec., Inc.*, 24 F.3d 480, 485 (3d Cir.1994). Under those standards, summary judgment is warranted when the submissions in the record show that there is "no genuine issue as to any material fact." Fed R. Civ. P. 56(c). An issue of material fact is "genuine" when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir.1989). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Any doubts about the existence of a genuine issue of material fact ought to be resolved in favor of the nonmoving party. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

Specifically, Home claims that B & R was named as an additional insured for Bogan's electrical work on a trailer at the plant, but that B & R was not an additional insured for the purposes of the policy taken out on the sludge storage work.

The District Court did not decide whether B & R is an additional insured under Bogan's insurance policy with Home. Instead, the Court assumed that B & R was an additional insured for the purposes of deciding the case, reasoning that summary judgment was warranted because the "bodily-injury exclusion" provision would bar indemnification even if B & R was an additional insured. We will assume *arguendo*, as did the District Court, that B & R is an additional insured under the insurance policy, but we conclude that even if B & R is found to be an additional insured under the policy, B & R is not entitled to indemnification because the insurance policy includes an express exclusion of coverage for bodily injury to the insured's employees.

This clause reads:

This insurance does not apply to . . .

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured . . .

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages or repay someone else who must pay damages because of the injury.

B & R contends that the meaning of "insured" depends on the identity of the party seeking coverage. In its submission, if B & R seeks coverage, as is the case here, "employee of the insured" refers to employees of B & R. This would mean that the employee injury exclusion provision does not apply since only Bogan's employees were injured. Home, however, reasons that "insured" always refers to the primary purchaser of the policy, which here would be Bogan.

Assuming that B & R is an additional insured under the policy, we conclude that under Pennsylvania law the employee injury exclusion provision of the insurance policy bars coverage for B & R with respect to the personal injury claims of the Bogan employees. In *Pennsylvania Mfr.'s Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co.*, 426 Pa. 453, 456, 233 A.2d 548, 550 (1967), the Court concluded that the employee injury exclusion provision applied to additional insureds seeking coverage under the policy, and not just to the primary purchaser of the policy. In *PMA*, an employee of Niehaus, which was insured by PMA, was injured when making a delivery to another company, Delaware, which was insured by Aetna. The employee sued Niehaus and Delaware, and PMA undertook the defense pursuant to an agreement that PMA and Aetna would submit the question of their respective liabilities to the Court as one of law. Delaware was an additional insured on PMA's policy in which Niehaus was the first "named insured." The PMA policy contained an employee injury exclusion provision similar to the provision in Home's insurance policy. The question before the Court was whether Delaware was insured under the PMA policy.

The Pennsylvania Supreme Court squarely rejected Aetna's position that the employee injury exclusion provision in the policy between Niehaus and PMA operated to exclude coverage for employees only when those employees are employed by the insured seeking coverage rather than to exclude employee coverage for employees of the named insured (regardless of which insured is seeking coverage). *Id.* Although it noted that "other jurisdictions

are divided on the question," the Court stated that the issue was settled under Pennsylvania law and that it saw no reason to stray from precedent on the matter. *Id.* at 458–59, 233 A.2d 548. Since the parties agree that in the diversity action we are bound by Pennsylvania law, we interpret the employee injury exclusion provision always to refer to the employees of Bogan as the named insured, and not the employees of B & R when B & R is seeking coverage. Since the injured employees for whose claims B & R seeks indemnification were Bogan employees, unless there is another provision in the policy that affects the results, *see* discussion *infra,* the employee injury exclusion provision bars coverage for B & R.

■ To the extent that lower Pennsylvania courts have taken a different view on the proper interpretation of "insured" in an employee injury exclusion provision from that espoused by the state supreme court in *PMA,* those more recent decisions are irrelevant to our analysis, for when sitting in diversity "we are to apply state law as interpreted by the state's highest court." *McKenna v. Pacific Rail Serv.,* 32 F.3d 820, 825 (3d Cir.1994). As Judge Bartle noted in *Microvote Corp. v. Montgomery County,* 942 F.Supp. 1046 (E.D.Pa. 1996):

> When ... there is a decision of the Supreme Court of the Commonwealth which is directly on point, we are bound by that decision. We must follow the ruling of the highest court of Pennsylvania even if the precedent is old. We must do so even if we think that the

state Supreme Court would change its mind were it ever to revisit the subject. *Id.* at 1049 (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *see also Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 17 (1st Cir. 1999) ("Absent conspicuous evidence that a state's highest court has abandoned a previously-announced rule, it is not for the federal courts to presume as much.").

B & R makes much of the fact that the states are divided on the meaning of "insured" in an employee injury exclusion provision. *See, e.g., Float–Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701, 708 (5th Cir.1966) (noting that "[t]here exists a pronounced conflict concerning the interpretation of such clauses"). B & R contends that its interpretation of "insured" as referring to the party seeking coverage represents the better view in policy terms. B & R maintains that because insurance contracts are considered adhesion contracts, any ambiguity in the policy should be interpreted against the insurer. This may be so, but it is for the Pennsylvania Supreme Court, not us, to decide. B & R asked us to certify this question to the Pennsylvania Supreme Court, but Pennsylvania seems to have taken a firm stance after considering the other views, so we see no point to certification.[2]

## II.

### A.

■ B & R claims that the "severability clause" in the Home policy excludes B & R from the employee injury exclusion provision by changing the meaning of "insured"

**2.** The Pennsylvania Supreme Court accepts questions of state law upon certification from a United States Court of Appeals pursuant to 210 Pa.Code § 63.10 (2002). Yet since *PMA* resolves the issue, we see no need to certify to the Pennsylvania Supreme Court, for "[t]he certification procedure was not designed so

as to allow a party 'to seek to persuade the state court to change what appears to be present law.'" *Venezia v. Miller Brewing Co.,* 626 F.2d 188, 192 n. 5 (1st Cir.1980) (quoting *Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir.1977)).

to refer to B & R, even if we interpret the meaning of "insured" in the employee injury exclusion provision always to refer to Bogan. The severability clause states:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

We conclude that the severability clause does not exclude B & R from the employee injury exclusion provision. In *PMA*, the Court addressed the relevance of a "Severability of Interests" clause in the policy similar to the severability clause in the Home policy. Aetna argued that even if the employee injury exclusion provision applied to employees of the named insured in addition to (or rather than) the insured seeking coverage, this clause created an exception to the exclusion. In particular, the severability clause stated that "the term 'insured' is used severally and not collectively." 426 Pa. at 456, 233 A.2d 548. The Court held that the severability clause did not create an exception to the exclusion, reasoning that since the employee injury exclusion provision was written in express terms while the language of the severability of interests clause was ambiguous, the employee injury exclusion provision will control because an ambiguous statement cannot trump an unambiguous statement. *Id.* at 459, 233 A.2d 548. It thus appears that under Pennsylvania law, as interpreted by the Commonwealth's highest court, the severability clause in the Home insurance policy will not exclude B & R from the employee injury exclusion provision.

B & R argues that we should distinguish the severability clause in *PMA* as materially different from the severability clause in the insurance contract between Home and Bogan. Specifically, B & R points out that the "antiquated" severability clause in *PMA* did not qualify the term "insured," but provided only that the term "the insured" is used severally and not collectively. Here, in contrast, B & R notes that what it calls the "modern" severability clause present in the Bogan–Home contract qualifies the term "insured" by referring to "each insured." B & R maintains that the presence of the word "each" indicates that the policy is to be read as if the insured seeking coverage were the only insured under the policy. In other words, B & R posits that the "modern" severability clause would change the interpretation of the employee injury exclusion provision so that "insured" would refer to whichever party was seeking coverage, and not always the primary purchaser of the policy, as we have found the employee injury exclusion provision to apply without the severability clause. Under this view, the employee injury exclusion provision would apply only to employees of B & R. Since these injured employees were Bogan employees and not B & R employees, the argument continues, the employee injury exclusion provision would be inapplicable.

We do not find the wording of the two severability clauses significantly different. At all events, we are bound by the holding of the Pennsylvania Supreme Court in *PMA* unless we find that the severability clause in the Home policy is distinguishable, and we do not. B & R points to *Luko v. Lloyd's London,* 393 Pa.Super. 165, 573 A.2d 1139 (1990), as a case in which a more "modern" version of a severability clause led to an outcome different from *PMA.* However, since the lower court in *Luko* takes a different view from the Court in *PMA,* we must still follow because it is the law as interpreted by the Pennsylvania Supreme Court. B & R is correct

that *Luko* construes a severability clause similar to the one at issue in this case as creating an exception to the policy's employee injury exclusion provision. *Id.* at 176, 573 A.2d 1139. Yet, *Luko* fails to distinguish *PMA* adequately, stating only that "[i]n that case, the court ... concluded that the clear and unambiguous policy language excluded employees of the insured. This holding has no application to a case where, as here, the clear language of the policy does provide coverage for employees." *Id.*

As *Luko* does not distinguish the "modern" severability clause from the severability clause in *PMA*, we are bound to follow the controlling Pennsylvania Supreme Court precedent in PMA. Thus, the severability clause does not exclude B & R from the employee injury exclusion provision in the Home insurance policy. B & R urges us to certify this question to the Pennsylvania Supreme Court if there is any uncertainly as to whether the holding in *PMA* applies to "modern" severability clauses. Once again, we see no need to certify the question to the Pennsylvania Supreme Court since the holding in *PMA* is virtually on point. *See supra* note 2.

**B.**

■ Alternatively, B & R contends that the presence of a "cross-liability endorse-ment" in the policy reverses the applicability of the employee injury exclusion provision "even if the severability clause is a nullity." [3] The cross-liability endorsement states:

> It is agreed that as respects claims against any Insured under this policy other Insureds, or employees of other Insureds shall be deemed to be members of the public....

> It is hereby agreed and understood that additional insureds are added on a blanket basis as shown on a Certificate of Insurance and as required by written contract.

B & R argues that this clause should be read as excluding B & R from the employee injury exclusion provision.

We conclude that the cross-liability endorsement in the Home policy does not exempt B & R from the employee injury exclusion provision because the language of the cross-liability endorsement is ambiguous and there is nothing to suggest that it was intended to reverse the applicability of that provision. Without more, we cannot conclude, as B & R urges us to, that the cross-liability endorsement modifies the effect of the provision to bar B & R from seeking coverage.[4] In short, having no

3. The "cross-liability endorsement" was not actually included in the original policy. Instead, Home later issued it to Bogan in order to clarify the terms of the original policy.

4. B & R maintains that the cross-liability endorsement distinguishes this case from *North Wales Water Authority v. Aetna Life & Casualty*, 1996 WL 627587, 1996 U.S. Dist. LEXIS 15997 (E.D.Pa.1996), *aff'd without opinion*, 133 F.3d 910 (3d Cir.1997), where there was no such endorsement. Because *North Wales* was not affirmed by a published opinion, it is not precedential under our Internal Operating Procedures. IOP § 6.2.1 (2002 ed.) In *North Wales*, also written by the author of the District Court opinion, the plaintiff sought in-

demnification from the insurance company of its subcontractor for payments resulting from the underlying civil action brought by an employee of the subcontractor who was hurt while working at the plaintiff's facility and had sued the plaintiff, its contractor, and its subcontractor for personal injury damages. As in the Home insurance policy, the subcontractor in *North Wales* had listed the owner as an "additional insured" on its liability policy and the contract contained a severability clause. While there may have been no cross-liability endorsement in *North Wales*, unless we have reason to believe that the endorsement modifies the employee injury exclusion provision, the mere presence of this endorse-

reason to believe that the cross-liability endorsement reverses the effect of the employee injury exclusion provision to bar B & R from receiving indemnification from Home, we affirm the District Court's grant of summary judgment to Home.

### C.

■ Finally, B & R asserts that Bogan agreed to indemnify B & R based on an agreement between MCI and B & R. When B & R hired MCI as a subcontractor for the refinery project, it purportedly entered into an agreement with MCI whereby MCI and all of its subcontractors were required to "assume unto [B & R] all of the obligations of the Subcontractor [MCI] as they relate to such portion of the Sublet work," including MCI's obligation to indemnify B & R. B & R contends that Bogan "agreed to provide insurance coverage for B & R" pursuant to "the contractual scheme imposed on MCI." B & R concedes that any such agreement was "not documented as would be a normal subcontract relationship," and is thus not in the record. B & R nonetheless contends that the Court should find that an agreement existed because MCI, which had explicitly agreed to provide coverage, and Bogan are commonly owed as part of the "Hake Group." B & R maintains that "[t]he Hake Group companies share offices and a number of administrative services and do not always fully regard their separateness." Moreover, B & R asserts that the same man, Joseph Nestel, handled contracting for both MCI and Bogan. These circumstances, B & R avers, "explain[ ] the lack of more formal contract documentation," and create "a fact question regarding the corporate separateness of MCI and Bogan and whether Bogan is for that rea-

son charged with complying with the terms of the MCI subcontract that flow down to lower-tier subcontractors under [its terms]."

We conclude that there is no genuine issue as to any material fact regarding whether Bogan agreed to indemnify B & R, *i.e.*, that there is nothing in the record which supports B & R's contention that we should presume that Bogan agreed to indemnify B & R simply because MCI agreed to indemnify B & R. B & R asserts that the "underlying facts" are in dispute as to whether Bogan was obligated to insure and indemnify B & R as a condition of working in the area where the accident struck. In other words, B & R contends that even though there may have been no written contract between B & R and Bogan under which Bogan would indemnify B & R, Bogan's alleged knowledge of the agreement between B & R and MCI, which required that any subcontractor of MCI indemnify B & R, creates a factual issue as to whether there was indeed an agreement between Bogan and B & R under which the former indemnified the latter. Moreover, B & R contends that this alleged agreement between B & R and Bogan fits within the "insured contract" exception to the bodily injury exclusion provision. We disagree.

The Home insurance policy defines an "insured contract" as:

> f. That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be

---

ment is not a distinction of legal significance. As Home correctly points out, "B & R offers *no* authority for its argument that ... the

endorsement factually distinguishes ... *North Wales* ...."

imposed by law in the absence of any contract or agreement.

B & R asserts that we should presume the existence of an agreement between Bogan and B & R because of the alleged transparency of corporate division between Bogan and MCI. Yet, in the absence of any evidence of a written or even an oral agreement directly between Bogan and B & R, the fact that Bogan's officers were aware that they should be indemnifying B & R according to the requirements of the contract between B & R and MCI does not support the conclusion that Bogan actually did indemnify B & R.

### D.

In sum, the District Court correctly granted summary judgment to Home on the grounds that the employee injury exclusion provision in Home's policy with Bogan excludes coverage for injuries suffered by employees of the insured, here Bogan, regardless of whether Bogan or B & R is seeking coverage, and that neither the severability clause nor the cross-liability endorsement alters this result.

### III.

■ Sun sought to join the litigation as co-plaintiff to B & R, but the District Court denied the motion for joinder in the November 7, 2000 Order granting summary judgment for Home against B & R. Specifically, the Court noted in Paragraph 4:

> Plaintiffs' Motion for Leave to Amend the Complaint to Add Party Plaintiff … is DENIED, plaintiffs having claimed that proposed Sun Company Inc.'s claims are substantially similar to the issues presented by Brown & Root's claims, and this Court having granted Home Insurance Co.'s motion for summary judgment.

At the same time, the Court ordered Sun to justify within five days why its claims against Home were any different from B & R's claims and ought not be dismissed just as the Court dismissed B & R's claims. The Court added:

> However, should Sun Company Inc. have claims that are not resolved by this Court's Order granting Home Insurance Co.'s motion for summary judgment, Sun Company is ORDERED to file an appropriate motion within five (5) days of the date of this Order detailing Sun Company's surviving claims and justifying leave to amend.

Sun never responded to the order to file an additional motion justifying its claims against Home within five days. Sun represents that it declined to do so because it believed that the Court lacked jurisdiction to issue such an order in light of its denial of the motion to join. Sun then brought a motion to reconsider, seeking clarification that the order denying joinder to Sun did not also dispose of Sun's claims on the merits. The District Court denied this motion as well. The scope of the Court's order is of continuing relevance to Sun because Sun has filed suit against Home in New York state court, and arguing that the November 7, 2000 Order is *res judicata* against Sun, Home has urged the state court to dismiss Sun's complaint on that ground. The New York state trial court denied Home's motion—as well as dismissed the case for *forum non conveniens*—but Home has now appealed the denial of its *res judicata* defense.

Insofar as the November 7, 2000 Order could be construed to have an effect on Sun's rights, we conclude that the District Court had no authority to enter any kind of adverse judgment on the merits against Sun, as the District Court had just denied Sun's motion for joinder. In *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104

L.Ed.2d 835 (1989), the Supreme Court noted that "[i]t is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 761, 109 S.Ct. 2180 (quoting *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)); *see also Doctor's Assocs., Inc. v. Reinert & Duree, P.C.,* 191 F.3d 297, 302 (2d Cir.1999) ("[A] court generally may not issue an order against a nonparty." (quoting *United States v. Paccione,* 964 F.2d 1269, 1275 (2d Cir.1992))). Based on this principle, the Court had no authority to issue a ruling on the merits against Sun when it had just denied Sun the right to join the action.

We are not entirely sure, however, whether the District Court entered an adverse judgment on the merits against Sun. The language in the November 7, 2000 Order that Sun fears amounts to an adverse judgment on the merits, ordering Sun to justify within five days why its claims against Home were any different that B & R's, is somewhat cryptic. To avoid any uncertainty, we remand to the District court with directions to vacate the sentence noted above in the November 7, 2000 Order. By so doing, we make clear that Sun, as a non-party in the proceedings below, did not have its rights affected by those proceedings.

Additionally, Sun asks us to proclaim that *res judicata* does not apply to its claims against Home in New York state court. The effect of our ruling to vacate the November 7, 2000 Order on the doctrine of *res judicata* in Sun's proceedings against Home in another court is a matter beyond our power to declare. Any holding about the *res judicata* effect of this ruling in another court would be an impermissible advisory opinion. *See Coffin v. Mal-*

*vern Fed. Sav. Bank,* 90 F.3d 851, 853 (3d Cir.1996) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." (quoting 13 Wright, Miller, Cooper, Federal Practice and Procedure § 3529.1, p. 293 (2d ed.1984))). To provide guidance to those courts applying *res judicata,* however, we emphasize that Sun is not and was not a party to this litigation and, therefore, did not have its rights affected in any way by the District Court's entering summary judgment against B & R.

### IV.

For the foregoing reasons, the order of the District Court dated November 7, 2000, granting summary judgment to Home based on the finding that the employee injury exclusion provision, unmodified by either the severability clause or the cross-liability endorsement, bars B & R from seeking indemnification from Home, will be affirmed. The District Court is directed to vacate the sentence in the order of the District Court dated November 7, 2000 stating:

> However, should Sun Company Inc. have claims that are not resolved by this Court's Order granting Home Insurance Co.'s motion for summary judgment, Sun Company is ORDERED to file an appropriate motion within five (5) days of the date of this Order detailing Sun Company's surviving claims and justifying leave to amend.

Costs shall be taxed against Brown & Root Braun, Inc.