**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**ONE HUNDRED AND TWENTY THOUSAND EIGHT HUNDRED
AND FIFTY SIX DOLLARS IN UNITED STATES CURRENCY
MORE OR LESS, Defendants
UNITED STATES v. $120,856 IN U.S. CURRENCY**

Civ. No. 2003-173

District Court of the Virgin Islands

Division of St. Thomas and St. John

January 2, 2005

JOYCELYN HEWLETT, AUSA, St. Thomas, U.S.V.I., *For the plaintiff.*

JUDITH L. BOURNE, ESQ., St. Thomas, U.S.V.I., MONTGOMERY BLAIR SIBLEY, ESQ., Washington, D.C., *For the claimant, Bernard Wray.*

MOORE, *District Judge*

## MEMORANDUM OPINION

(January 2, 2005)

### I. FACTUAL AND PROCEDURAL BACKGROUND

The claimant, Bernard Wray, traveled on March 22, 2002 from St. Maarten, Netherlands Antilles, to the United States Virgin Islands on board a Liat Airlines flight. Upon arriving at St. Thomas' Cyril E. King Airport, Wray presented himself to United States customs officials and did not state on his customs declaration that he was transporting more than $10,000 in United States currency. Upon inspection, a customs officer discovered $120,856.00 in United States' currency hidden in the lining of Wray's suitcase. The customs officials placed Wray under arrest and seized the currency.

Wray was charged by superceding indictment in Criminal Case Number 2002-53 with violations of 31 U.S.C. §§ 5316 and 5332 (a) and criminal forfeiture under 31 U.S.C. § 5332(b), as well as knowingly making a materially false or fraudulent statement to customs agents in violation of 18 U.S.C. § 1001(a), all grounded on his failure to declare that he was carrying more than $10,000 in currency.

At trial, Wray testified that he lived in Guyana, and had traveled from the Netherlands Antilles to St. Thomas to assist his girlfriend, who had come to the territory and encountered legal troubles of her own. Wray further testified that he planned to travel to New York City to care for his mother after assisting his girlfriend. (Trial Tr. at 110-11.) On an earlier trip to the United States, Wray was disgusted with the squalid conditions his mother was living under, including a leaking roof and raw sewage coming out of the sink. Although he had attempted to get the landlord to fix the problems, he was unsuccessful. Seeing no other recourse, Wray had decided to move to New York and use his life-savings to help his mother purchase a home. (*Id.* at 113.)

Wray also testified that his life-savings, which he carried with him on his trip to St. Thomas, was earned through two jobs he held in Guyana. One job was with Light Engineering, a business owned by his family members that re-manufactures mechanical products, and the other was his own side business involving importation of household appliances in Guyana. (*Id.* at 114.) In his own words,

> My lifestyle isn't really extravagant. I've been living with my grandparents since like 1990. I really have no overhead. I have no kids. I'm not married. All I do is work and save my money.

(*Id.* at 113.) Wray testified that he kept his savings hidden at home in United States currency because of the unstable nature of banks and currency in Guyana. In fact, his father lost his entire account at a bank in Guyana after the bank collapsed. (*Id.* at 116.) While Wray admitted he carried the money into the United States, Wray testified that he did not declare that he had the money at customs because he was unaware of the need to declare more than $10,000 in U.S. currency. (*Id.* at 122-123.) At no point in the trial did the government put on any evidence that this money, or Wray, have ever been involved in terrorism, drug smuggling, money laundering, or any other illegal activity.

The jury found Wray guilty of making a false statement (18 U.S.C. § 1001) but acquitted him of all of the currency concealment and money smuggling charges (31 U.S.C. §§ 5316 and 5332). The sentencing guideline range for this conviction was zero to six months and a fine of from $250 to $5,000. I sentenced him to one year of probation for the section 1001 conviction and imposed no fine.

On October 31, 2003, the United States filed a civil complaint in this matter, seeking forfeiture of the money seized from Wray at the airport. Wray filed a motion to dismiss on the pleadings under Rule 12(c), arguing that the government's action constituted a constitutional violation of the Double Jeopardy clause.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to FED. R. CIV. P. 12(c) can be treated as one for summary judgment under FED. R. CIV. P. 56, FED. R. CIV. P. 12(c); *Martin v. Wise*, 38 F.R.D. 477, 5 V.I. 319, 324 (1965). Under those standards, summary judgment is warranted when the submissions in the record show that there is "no genuine issue as to any material fact." FED. R. CIV. P. 56(c). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brown & Root Braun v. Bogan Inc.*, 54 Fed. Appx. 542, 546 (3d Cir. 2002).

## III. ANALYSIS

Before determining whether any constitutional violations occurred in this case, I first examine what the government must prove to make its case under 31 U.S.C. §§ 5317 and 5332 (c).

### A. Statutory Provisions
#### 1. Section 5317

The civil forfeiture provision of section 5317(c) (2) reads:

(2) Civil forfeiture—Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

31 U.S.C. § 5317(c)(2). Section 5316, under which claimant was indicted and acquitted, requires the reporting of specific information when a person "knowingly transports, is about to transport, or has transported, monetary instruments of more than $10,000" into or out of the United States. 31 U.S.C. § 5316.

■ In this case, however, claimant was not convicted of violating section 5316. Courts nevertheless have repeatedly ruled that despite the language of the statute there is a different knowledge requirement in civil and criminal forfeitures. In a criminal forfeiture, the government must show two elements: that the person had knowledge of the reporting requirement and knowledge that he or she was transporting more than $10,000 into or out of the country. *See, e.g., United States v. 100,348 in U.S. Currency*, 354 F.3d 1110, 1115 (9th Cir. 2004); *United States v. Alzate-Restreppo*, 890 F.2d 1061, 1064-65 (9th Cir. 1989). In a civil forfeiture proceeding, however, the government need prove only one element—that the person had "knowledge that he or she is transporting more than $10,000 out of or into the country." *United States v. 100,348*, 354 F.3d at 1115.

Indeed, the facts of *United States v. 100,348.00 in U.S. Currency* are similar to the facts in this case. In that case, the claimant was acquitted of the section 5316 charge and convicted of section 1001. He also received no criminal fine for violating 18 U.S.C. § 1001. The court of appeals held that, because civil forfeiture requires proving only knowledge of carrying more than $10,000 into or out of the United States, while criminal forfeiture requires proving both that knowledge and knowledge of the reporting requirement, the government could still pursue a civil forfeiture action under section 5317 despite claimant's section 5316 acquittal.

■ I similarly rule that the government can pursue this forfeiture action against claimant's funds under section 5317 even though he was acquitted of criminally violating section 5316. Moreover, the claimant has judicially admitted that he had knowledge that he was transporting more than $10,000 of currency into the Virgin Islands. At his criminal trial, Wray admitted he knew he was carrying the $120,856 in his suitcase. (Trial Tr. at 117.) As the only element that the government is required to prove is that those funds are subject to forfeiture under 31 U.S.C. § 5317, it is likely that the government will be able to prevail at trial, subject to the constitutional limitations detailed below.

### 2. Section 5332(c)

The civil forfeiture provision of 31 U.S.C. § 5332(c) reads:

(1) In general.—Any property involved in a violation of subsection (a), or a conspiracy to commit such violation, and any property

495

traceable to such violation or conspiracy, may be seized and ... forfeited to the United States.

(2) Procedure. The seizure and forfeiture shall be governed by the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

Section 5532(a), referenced in section 5332(c)(1), reads, in relevant part:

(1) In general. Whoever, with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States, or from a place outside the United States to a place within the United States, shall be guilty of a currency smuggling offense and subject to punishment pursuant to subsection (b).

This statute, also referred to as the bulk cash smuggling statute, was enacted in October 2001 as part of the USA Patriot Act. USA Patriot Act, Pub. L. 107-56, Tit. III, § 371, 115 Stat. 272, 336-38 (2001). Recognizing that smuggling a large quantity of cash is "one of the most reliable warning signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar crimes," H.R. 3162, 107th Cong., § 371(a)(3) (2001) (enacted), Congress stated that the purposes of section 5332 are:

(1) to make the act of smuggling bulk cash itself a criminal offense;
(2) to authorize forfeiture of any cash or instruments of the smuggling offense; and
(3) to emphasize the seriousness of the act of bulk cash smuggling.

H.R. 3162, § 371(b). *See also United States v. $293,316 in United States Currency*, 2004 U.S. Dist. LEXIS 25611 (S.D.N.Y. Dec. 23, 2004) (federal reporter cite not yet available).

Assessment of civil forfeiture under section 5332(c) is predicated on the commission of the crime of currency smuggling. *See* 31 U.S.C.A. § 5332(c)(1) ("Any property involved in a violation of subsection (a)

496

... ." (emphasis added)); *see also United States v. $293,316*, 2004 U.S. Dist. LEXIS 25611 at *10. In Wray's case, however, there was no violation of section 5332(a). While the claimant was indicted for violating section 5332(a), a jury of his peers acquitted him of this violation. This procedural stature is unique. Because this section was enacted in October 2001, there are very few cases interpreting this statute and none that deal with whether someone acquitted under 5332(a) is still subject to the civil forfeiture penalties in 5332(c). I look to interpretations of similar statutes for guidance.

The language of section 5532(c) differs from the language of section 5317. Section 5332 specifically requires proof of two elements: the claimant must (1) act with the "intent to evade a currency reporting requirement" and (2) "knowingly conceal [ ] more than $10,000 in currency." The statutory words of section 5317, on the other hand, only specify one element, namely, that the claimant acted with "knowledge that he [was] transporting more than $10,000 out of or into the country." I therefore interpret section 5332(c) as requiring proof of both statutory elements. The only difference in proving the criminal violation of 5332(a) and proving the civil forfeiture claim of 5332(c) is the government's burden of proof. A section 5332(a) violation requires proof beyond a reasonable doubt, whereas the government may establish a forfeiture under section 5332(c) by a mere preponderance of the evidence.

Section 5332(c) requires proof of two elements and the claimant has not conceded either of those elements. The claimant only admitted at his criminal trial that he carried the currency into the United States. Not only did he did not concede at his criminal trial that he intended to evade the currency reporting, he specifically denied that he had intended to evade the currency reporting requirement. Nevertheless, the government has stated a viable claim for forfeiture section 5317(c) against the claimant's $120,856, again subject to the Eighth Amendment restrictions.

## B. Constitutional Violations

### 1. Double Jeopardy Clause

 Plaintiff argues that his acquittal in the criminal prosecution and the Double Jeopardy Clause of the Fifth Amendment of the United States

Constitution[1] bar this civil forfeiture proceeding. Unfortunately for claimant, the Supreme Court has repeatedly held that, for purposes of the Fifth Amendment, civil forfeiture is not punishment and therefore the government may prosecute a person for both criminal and civil forfeiture without violating the Double Jeopardy Clause. *See United States v Usery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996) (holding that "*in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause.").[2] I therefore conclude that filing for forfeiture under either or both 31 U.S.C. §§ 5317 and 5332 does not violate the Double Jeopardy Clause.

Although the Double Jeopardy Clause does not apply in this case, my review of claimant's motion has revealed that another substantial constitutional question is implicated by the government's attempt to forfeit all of Wray's money. That concern stems from the Excessive Fines Clause of the Eighth Amendment and the Supreme Court's application of it to civil forfeiture actions.

## 2. The Excessive Fines Clause of the Eighth Amendment

The Excessive Fines Clause of the Eighth Amendment provides that "excessive fines shall not be imposed." U.S. CONST. amend. VIII.[3] As interpreted by the Supreme Court, the Eighth Amendment limits the government's power to extract payments as a punishment for an offense. *Austin v. United States*, 509 U.S. 602, 609-610, 125 L. Ed. 2d 488, 113 S. Ct. 2801. In *United States v. Bajakajian*, 524 U.S. 321, 327, 141 L. Ed. 2d 314, 118 S. Ct. 2028 (1998), the Supreme Court explicitly held that civil forfeiture of all the funds involved in an offense can violate the Excessive Fines Clause.

---

[1] Congress has made the Fifth Amendment applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954. The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645, reprinted in V.I. CODE ANN., Historical Documents, 73-177 (codified as amended) (1995 & Supp 2004).

[2] While the Supreme Court has held that civil forfeitures are not considered punishment for purposes of the Fifth Amendment, the Supreme Court has applied a different analysis to criminal and civil forfeitures under the Eighth Amendment, as discussed in the text *infra.*

[3] Congress has made the Eighth Amendment applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954. The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645, reprinted in V.I. CODE ANN., Historical Documents, 73-177 (codified as amended) (1995 & Supp. 2004).

In *Bajakajian*, the government sought criminal forfeiture under 31 U.S.C. § 5317 of $357,144 that Bajakajian failed to report when leaving the country. Bajakajian pled guilty to failing to report currency in violation of 31 U.S.C. § 5316, one of the offenses on which Wray was indicted and acquitted. *Id.* at 324-25. At a bench trial on the government's claim that criminal forfeiture was appropriate, the district court found that imposition of a complete forfeiture would be "extraordinarily harsh" and "grossly disproportionate to the offense in question," and that it would therefore violate the Excessive Fines Clause. The district court ordered forfeiture of $15,000, and imposed a sentence of three years of probation with a fine of $5,000. The Ninth Circuit Court of Appeals affirmed the district court's ruling.

■ The Supreme Court agreed with both the district court and the Court of Appeals holdings that forfeiting all of the money would violate the Excessive Fines Clause—it would "be grossly disproportional to the gravity of his offense." *Id.* at 324. In ruling that the Excessive Fines Clause applied to criminal forfeitures, the Supreme Court emphasized that these forfeitures are a punishment and qualified as a "fine" under the Bill of Rights. While *Bajakajian* dealt only with criminal forfeiture, the Supreme Court has held that both civil and criminal forfeitures are punishment for the purposes of applying the Excessive Fines Clause. *See Austin v. United States*, 509 U.S. at 621-622 (holding that a modern statutory fine is a "fine" if it constitutes punishment even in part regardless of whether the proceeding is criminal or civil). Other courts have also applied *Bajakajian* to civil forfeitures. *See, e.g., U.S. v. $273,969.01*, 164 F.3d 462, 466 (9th Cir. 1999). Accordingly, I hold that *Bajakajian* applies to the facts of this case.

In *Bajakajian*, the Supreme Court found that forfeiture of the entire amount seized would be grossly disproportionate to the gravity of Bajakajian's offense. 524 U.S. at 337. The Court based its finding on several factors, including

(1) the essence of the crime of the respondent and its relation to other criminal activity;

(2) whether the respondent fit into the class of persons for whom the statute was designed;

(3) the maximum sentence and fines that could have been imposed; and

(4) the nature of the harm caused by the respondent's conduct.

*Id.* at 337-39 & 338 n.13; *see also United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003) (per curium) (summarizing and applying the above factors); *United States v. $293,316*, 2004 U.S. Dist. LEXIS 25611 at *19-20 (same). The Court concluded that seizing the entire amount of money would be grossly disproportional to the crime of failing to report the money because

(1) the respondent's crime was "failing to report the wholly legal act of transporting his currency" and that it was legal for him to be in possession of the currency;

(2) his violation was unrelated to any other illegal activity and the currency was not the proceeds of illegal activity;

(3) he did not fit into the class of persons for whom the statute was designed, i.e., a money launderer, drug trafficker or tax evader;

(4) his maximum length of imprisonment was six months and maximum fine was $5,000 under the Sentencing Guidelines, which confirmed a minimal level of culpability; and

(5) the harm he caused was minimal because his failure to report the currency affected only the government and in a relatively minor way because the government was deprived "only of the information [that money] had left the country."

*Bajakajian*, 524 U.S. at 337-39. Because the claimant only appealed whether the forfeiture of the entirety of the $326,000 of the seized money would violate the Excessive Fines Clause the amount of the forfeiture imposed by the district court was not before the Court.

After *Bajakajian*, 18 U.S.C. § 983 was enacted as part of the Civil Asset Forfeiture Reform Act of 2000. Section 983(g) essentially codifies *Bajakajian:* "The court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture," to determine whether the forfeiture is constitutionally excessive. This section further sets out procedures for civil forfeitures, including those involved in this case. I further hold that section 983, as well as *Bajakajian*, governs this forfeiture action.

### 3. Applying the Excessive Fines Clause of the Eighth Amendment

Under *Bajakajian*, the complete forfeiture of all of Wray's funds sought by the government would be totally unconscionable. First, as in *Bajakajian*, the government could not produce any evidence, credible or otherwise, connecting the claimant's money to any illegal activities. In

his criminal trial, claimant demonstrated that his money was the proceeds of his legitimate business in Guyana and that, due to the instability of the country and its banking system and currency, it was common to carry large amounts of U.S. dollars. Claimant also testified that he had this large amount of cash because he was moving to New York in order to assist his mother. The cash in this case, as in *Bajakajian*, had no connection whatsoever to illicit activity.

Next, Wray simply does not fit into the class of persons for whom the statute was designed—he is not a money launderer, a drug trafficker, or a tax evader. He is a legal immigrant trying to move to the United States from an unstable country with a poor banking system. *See also United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999) (weighing the fact that the claimant had "not been charged with any related criminal activity" in determining whether a forfeiture was excessive). Moreover, a jury of his peers was convinced that he was not a member of the class of persons that 31 U.S.C. §§ 5316 and 5332 were intended to punish; they acquitted him of those criminal charges. Again, even more than the claimant in *Bajakajian*, Wray is not the type of person for whom the statute was designed.

These are very unusual circumstances, different from *Bajakajian* where the claimant had pled guilty to violating 31 U.S.C. § 5316. Here, Wray not only did not plead guilty, he was acquitted of the criminal charges that would have incurred an automatic criminal forfeiture of all his money. It thus would be unconscionable to punish the claimant by taking his entire $126,856.00 in the face of the determination of a jury of his peers that he had done nothing wrong except fail to declare the money on a customs form.

It is instructive, however, to look closely at the treatment of claimants in a roughly analogous recent case out of New York. In *United States v. $293,316*, 2004 U.S. Dist LEXIS 25611 (S.D.N.Y. Dec. 23, 2004) (federal reporter cite not yet available), the government brought civil charges pursuant to sections 5316, 5317, and 5332 of Title 31, seeking forfeiture of $515,582 in U.S. dollars it has seized from three individuals boarding a flight leaving from New York City and terminating in Pakistan. The three individuals were criminally charged with conspiring to conceal more than $10,000 in currency in violation of 31 U.S.C. § 5332(a) and 18 U.S.C. § 371, concealing more than $10,000 in currency in violation of 31 U.S.C. § 5332(a), and making false

statements to a government agent in violation of 18 U.S.C. § 1001(a)(2). Except for one of the false statement counts against one of the individuals, they were convicted by a jury of all the aforementioned charges. At their criminal trial, evidence showed that the individuals had no ties to terrorism or other illegal activity, and that much of the money was carried on behalf of other individuals living in the United States to help their families and friends in Pakistan.

Following the criminal trial, the government commenced civil forfeiture proceedings against the seized money pursuant to sections 5316, 5317, and 5332 of the United States Code. The three convicted individuals filed claims for the portion of the seized money which was theirs. Upon cross-motions for summary judgment, the trial judge in *United States v. $293,316*, relying on *Bajakajian*, ruled that forfeiture of the entire amount of the claimants' currency would be grossly excessive in violation of the Excessive Fines Clause. Taking into account the gravity of the section 5332(a) and other offenses for which the individuals were convicted, the trial judge concluded that an appropriate forfeiture was fifty percent of the amount of currency each individual had proved was his own.

Unlike the claimants in *United States v. $293,316*, Wray was acquitted of the section 5332 charge and found guilty of only section 1001. The *$293,316* claimants, in contrast, each were convicted of no less than three criminal acts, including violations of 31 U.S.C. § 5332(a). Also unlike the claimants in *$293,316*, Wray was bringing money into the United States, rather than taking it to a foreign jurisdiction and out of the monitoring control of the United States' government. Thus, Wray caused the United States considerably less harm than the three individuals in *$293,316*. Thus, relying on the interpretation of the Excessive Fines Clause presented in *$293,316*, Wray's forfeiture should be considerably less than fifty percent of the money seized.

I also find some guidance in considering the maximum monetary penalty Wray could have received under his section 1001 conviction. In preparation for sentencing Wray for his conviction of 18 U.S.C. § 1001(a), the probation officer determined, and I accepted, that the maximum amount the claimant could have been fined under the Sentencing Guidelines was $5,000.

Finally, the offense of which Wray was convicted caused little harm to the United States. According to the jury in Wray's criminal trial, the only

502

harm the government suffered was not knowing the amount of money in excess of $10,000 claimant was bringing into the United States Virgin Islands. Absent his failure to declare it, the United States is not entitled to any of the currency he had earned in Guyana. The government was deprived only of the information that money had come into the country. *See Sajakajian,* 524 U.S. at 338. As noted in *Bajakajian,* this harm is insignificant compared to claimant's loss of all his hard-earned money.

The nature of the harm is also evidenced by the sentence I imposed on Wray on the one count of conviction, 18 U.S.C. § 1001. Although he could have been sentenced to six months in jail and fined up to $5,000, 1 reviewed all the circumstance, including the evidence adduced at trial, and sentenced Wray to one year probation and imposed no fine. This punishment demonstrated my belief that the claimant's actions caused little harm to the government.

The Supreme Court also noted in *Bajakajian* that the total forfeiture sought by the government was larger than the "fine imposed by the District Court by many orders of magnitude, and it bears no articulable correlation to any injury suffered by the Government." *Bajakajian,* 524 U.S. at 340. Similarly, the government's effort here to forfeit Wray's entire $120,856 bears "no articulable correlation" to any injury the United States has suffered. Full forfeiture would be infinitely greater than the zero fine imposed in Wray's criminal case. While smuggling illegal money and failing to report ill-gotten gains are serious crimes, the claimant was not involved in such serious offenses. His only crime was not letting the government know how much currency he was bringing into the Virgin Islands. He did not facilitate terrorism, drug smuggling, or engage in any other illicit activities.

On the assumption that the government will be able to prove that the currency Wray attempted to bring into the Virgin Islands is subject to forfeiture under 31 U.S.C. § 5317 and/or 5332, and taking into consideration all of the factors set forth in *Bajakajian,* I hold that complete forfeiture of the $120,856.00 would be "extraordinarily harsh" and "grossly disproportionate to the offense in question." The relief the government seeks therefore would violate the Excessive Fines Clause of the Eighth Amendment.

## C. Appropriate Amount of Forfeiture

In the event that the government prevails in its effort to establish that the funds Wray claims are subject to forfeiture and applying the factors considered in *Bajakajian*, it is clear that the constitutionally appropriate proportional amount of the forfeiture is far, far less than the full $120,856.00 he attempted to bring in. The appropriate proportional amount would be no more than $7,500, slightly more than the maximum fine for claimant's section 1001 offense of conviction. This monetary cap will limit the fact-finder's assessment of the amount to be forfeited in the event the government prevails in this forfeiture action.

## IV. CONCLUSION

Claimant's Rule 12(c) motion to dismiss will be denied because the government's civil forfeiture action under 31 U.S.C. §§ 5317 and/or 5332 does not violate the Double Jeopardy Clause of the Fifth Amendment. I do find, however, that the Excessive Fines Clause of the Eighth Amendment applies to bar the complete forfeiture of all the fund[s] alleged in this case. For the reasons articulated above, any recovery by the United States in the forfeiture action shall not exceed $7500. An appropriate order follows.