# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 14, 2012 Session

# DANIEL RENTERIA-VILLEGAS ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.

**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 3:11-00218      Kevin H. Sharp, Judge**

---

**No. M2011-02423-SC-R23-CQ - Filed October 4, 2012**

---

We accepted a question of law certified by the United States District Court for the Middle District of Tennessee to determine whether the October 2009 Memorandum of Agreement between the United States Immigration and Customs Enforcement and the Metropolitan Government of Nashville and Davidson County, by and through the Davidson County Sheriff's Office, violates the Charter of Nashville and Davidson County or other state law. We conclude that the Memorandum of Agreement does not violate the Charter or any other state law cited by the plaintiffs.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Elliott Ozment and Andrew Free, Nashville, Tennessee; Trina Realmuto, Boston, Massachusetts; William L. Harbison and Phillip F. Cramer, Nashville, Tennessee; Thomas Fritzsche and Daniel Werner, Atlanta, Georgia, for the plaintiffs, Daniel Renteria-Villegas, David Ernesto Gutierrez-Turcios, and Rosa Landaverde.

Saul Solomon, Director of Law; Keli J. Oliver and Derrick C. Smith, Assistant Metropolitan Attorneys, Nashville, Tennessee, for the defendant, Metropolitan Government of Nashville and Davidson County.

Jerry Martin, United States Attorney; Matthew M. Curley, Assistant United States Attorney; Tony West, Assistant Attorney General; David J. Kline, Director; Jeffrey Robins, Assistant

Director; Craig A. Defoe, Trial Attorney, for the defendant, United States Immigration and Customs Enforcement.

Scott P. Tift, Nashville, Tennessee, for the amici curiae, George E. Barrett, C. Dewey Branstetter, Jr., and Hon. Marietta M. Shipley.

Tricia Herzfeld, Nashville, Tennessee, for the amici curiae, The Tennessee Immigrant and Refugee Rights Coalition, The American Civil Liberties Union of Tennessee, ASISTA Immigration Assistance, The National Center for Victims of Crime, and The National Crime Victim Law Institute at Lewis & Clark Law School.

**OPINION**

We accepted this case pursuant to Tennessee Supreme Court Rule 23, which allows this Court to answer questions of Tennessee law certified by any federal court when "there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. As head of this state's judiciary and as part of our inherent judicial power under Article VI, section 1 of the Tennessee Constitution, we are authorized to answer certified questions of law. Seals v. H & F, Inc., 301 S.W.3d 237, 241 (Tenn. 2010). Rather than requiring a federal court to make the law of this state or to abstain from deciding the case until the state courts resolve the point of law, answering certified questions from federal courts promotes judicial efficiency and comity and also protects this state's sovereignty. Haley v. Univ. of Tenn.-Knoxville, 188 S.W.3d 518, 521 (Tenn. 2006). Under Rule 23, we only answer questions of law, not questions of fact or controversies as a whole. Seals, 301 S.W.3d at 241.

We address the question of whether the October 2009 Memorandum of Agreement between the United States Immigration and Customs Enforcement and the Metropolitan Government of Nashville and Davidson County, by and through the Davidson County Sheriff's Office, violates the Charter of Nashville and Davidson County or other state law. This issue of law arises out of litigation filed by the plaintiffs Daniel Renteria-Villegas, David Ernesto Gutierrez-Turcios, and Rosa Landaverde against the Metropolitan Government of Nashville and Davidson County ("Metro") and the United States Immigration and Customs Enforcement ("ICE").[1] Plaintiffs Renteria-Villegas and Gutierrez-

---

[1] ICE is an agency within the Department of Homeland Security that plays a major role in enforcing federal immigration statutes and is responsible for conducting criminal investigations to identify, apprehend, and remove illegal aliens from the United States. See Arizona v. United States, 567 U.S. ___, 132 S. Ct. 2492, 2499-500 (2012) (citing Dept. of Homeland Security, Office of Immigration Enforcement Actions: (continued...)

Turcios allege that Davidson County Sheriff's officers arrested and wrongfully interrogated and detained them while the officers investigated the plaintiffs' immigration status pursuant to the October 2009 Memorandum of Agreement ("MOA") entered into between the Davidson County Sheriff's Office ("DCSO") and ICE. Plaintiff Landaverde, a property owner and taxpayer in Davidson County, alleges that removal proceedings were instituted against her son after he was processed by Davidson County Sheriff's officers pursuant to the MOA. In addition to injunctive relief and damages, the plaintiffs seek declaratory relief regarding the validity of the MOA entered into between the DCSO and ICE under the Metropolitan Charter of Nashville and Davidson County (the "Charter").

According to the stipulated facts presented with the certified question, the MOA was entered into under the Immigration and Nationality Act, § 287(g), 8 U.S.C. § 1357(g) (2006). The MOA authorizes selected DCSO personnel to perform certain immigration officer duties after being trained and certified by ICE. Those duties include interrogating any person believed to be an alien as to his right to be or remain in the United States; processing any removable alien or those aliens who have been arrested for violating a federal, State, or local offense for immigration violations; serving arrest warrants for immigration violations; administering oaths, taking and considering evidence, and preparing affidavits and sworn statements for ICE supervisory review; preparing charging documents for signature of ICE supervisors; issuing immigration detainers for processing aliens in categories established by ICE supervisors; and detaining and transporting arrested aliens subject to removal to ICE-approved detention facilities. DCSO officers perform their duties subject to the limitations contained in the Standard Operating Procedure in Appendix D[2] to the MOA; provide notification within twenty-four hours to an ICE supervisor of any detainees placed under authority; obtain authorization from an ICE supervisor or designee prior to initiating transfer of § 287(g) detainees into ICE custody; submit a plan to ensure that steps are taken to correct, modify, or prevent the recurrence of errors when informed by ICE of any error in the records; and make individualized custody recommendations to ICE.

We are guided in our interpretation of the Charter by the principles of statutory construction. Jordan v. Knox Cnty., 213 S.W.3d 751, 763 (Tenn. 2007). We must give full effect to the intent and purpose of the drafters, see Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008), without unduly broadening or restricting the Charter. Seals, 301 S.W.3d at 242. We must look to the language of the Charter, and if the

_____

[1](...continued)
2010, at 1, 2 (2011)).

[2] Appendix D to the MOA establishes standard, uniform procedures for the implementation and oversight of the § 287(g) program. It outlines standard procedures for inmate prioritization, training, data collection, and supervision.

language is "clear and unambiguous, . . . we must simply enforce it as written." Waldschmidt, 271 S.W.3d at 176. However, if the language is ambiguous, then we may refer to the broader statutory scheme, the history of the Charter, and other sources to discern its meaning. See Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

When the Charter was adopted in 1962, it consolidated the functions of the DCSO and the Nashville Police Department. The stated purpose of the constitutional amendment authorizing consolidation was to "eliminate duplication and overlapping of duties and services" to realize "economic savings to taxpayers." Metro. Gov't of Nashville & Davidson Cnty. v. Poe, 383 S.W.2d 265, 277 (1964). It is not likely that the Charter framers envisioned that decades later, a sheriff would be performing immigration functions for the federal authorities and, accordingly, there are no Charter provisions that directly address the DCSO's authority to perform these duties.

Consistent with its purpose of consolidation, the Charter delineated the separate duties of the Sheriff and Police Chief. Charter section 16.05 provides that the Sheriff shall have such duties prescribed by Tennessee Code Annotated section 8-8-201 or by any other provisions of general law. Pursuant to section 8-8-201 (2011), the Sheriff has broad general powers, including the power to enforce the ordinances of the municipality, Tenn. Code Ann. § 8-8-201 (34), and "such other duties as are, or may be, imposed by law or custom." Tenn. Code Ann. § 8-8-201(36)(b)(2). Section 8-8-201(36)(b)(1) references over 100 code sections which also set forth the Sheriff's duties. Tennessee Code Annotated section 38-3-102 (2010) is among the code sections listed, and it provides

> (a) The sheriff is the principal conservator of the peace in the sheriff's county. It is the sheriff's duty to suppress all affrays, riots, routs, unlawful assemblies, insurrections, or other breaches of the peace, to do which the sheriff may summon to such sheriff's aid as many of the inhabitants of the county as such sheriff thinks proper.

> (b) It shall be the duty of the sheriffs, in their respective counties, by themselves or deputies, to patrol the roads of the county, to ferret out crimes, to secure evidence of crimes, and to apprehend and arrest criminals.

Contrary to section 38-3-102, however, section 16.05 of the Charter expressly provides that within the area of the metropolitan government, the Sheriff shall not be the "principal conservator of the peace." This function is assigned to the Metropolitan Chief of Police. As

-4-

between the Sheriff and the Police Chief, Charter section 16.05 gives the Sheriff custody and control of the metropolitan jail, and designates the Police Chief as the "principal conservator of the peace." Charter section 2.01 provides that when any power is vested by the Charter in a specific officer, that officer shall be deemed to have exclusive jurisdiction within the particular field.

The Charter marks the boundary between the duties of the Sheriff and the Police Chief. There is no dispute, however, between the Sheriff and the Police Chief as to who can perform the duties required by the MOA. The question is whether the Sheriff can perform these duties when the Police Chief does not do so and Metro has specifically directed the Sheriff to perform the duties. By resolution, Metro authorized and directed the Sheriff to perform "such immigration officer functions, in coordination with ICE, as specified in the [MOA]."[3] The Sheriff, acting at the direction of Metro, entered into the MOA with ICE.[4]

While the Charter makes the Police Chief the "principal conservator of the peace," it does not expressly prohibit the Sheriff from engaging in all activities that could conceivably be considered "law enforcement." Nothing in section 16.05 indicates that the Police Chief is the *only* conservator of the peace. The role of principal conservator of the peace, assigned to the sheriff by section 38-3-102, is shared with other officials based on the following language from section 38-3-103:

> The judicial and ministerial officers of justice in the state, and the mayor, aldermen, marshals and police of cities and towns, and the director, commissioner, or similar head of any metropolitan or municipal police department, whether elected or appointed, are also conservators of the peace, and are required

---

[3] Metro Gov't of Nashville & Davidson Cnty., Tenn. Resolution No. RS2009-997.

[4] Tennessee Code Annotated section 50-1-101(a) (2011) provides as follows:

> For purposes of enforcing federal immigration laws, . . . the legislative body of a municipality or county, or the chief law enforcement officer of the county upon approval by the governing legislative body, may enter into a written agreement, in accordance with federal law, between the municipality or county and the United States department of homeland security concerning the enforcement of federal immigration laws, detention and removals, and investigations in the municipality or county.

Metro was specifically authorized to enter into an agreement with ICE, and Metro authorized the Sheriff to execute the agreement on Metro's behalf. Since the Sheriff was not specifically precluded by statute from signing the agreement, the agreement between ICE and the Sheriff on behalf of Metro is valid.

to aid in the prevention and suppression of public offenses, and
for this purpose may act with all the power of the sheriff.

This statute, giving more than one governmental official the title and authority of conservator of the peace, was in effect when the Charter was drafted,[5] and the drafters' use of similar language in the Charter reflects an awareness of the statute. The language of the Charter clearly contemplates that the principal conservator of the peace is not the only conservator of the peace.

According to the MOA, the purpose of the collaboration between ICE and the Sheriff is to "enhance the safety and security of communities by focusing resources on identifying and processing for removal criminal aliens who pose a threat to public safety or danger to the community." In other words, the goal of the MOA and its delegation of authority to the Sheriff is to preserve the public peace through enforcement of federal immigration law. Since collaborative programs such as the one at issue were rare in 1962 when the Charter was adopted, it is understandable that the Charter is silent regarding the power of the city or its agencies to enter into a contract such as the MOA. However, Section 18.17 of the Charter anticipates cooperative endeavors between metropolitan officials and outside authorities, as follows:

> The mayor and council of the metropolitan government shall
> have the power and authority to participate in, cooperate in and
> take all necessary action with respect to any and all projects,
> programs and undertakings of any nature whatsoever authorized
> by any statute, rule, or regulation of the United States, of the
> State of Tennessee, or any federal or state agency.

The language of this section encompasses and sanctions the contract in this case, which constitutes a cooperative law enforcement effort between the Sheriff and ICE.

The plaintiffs assert that the outcome of this case is controlled by our holding in Poe, in which, shortly after adoption of the Charter in 1964, we addressed the division of law enforcement duties between the Sheriff and the Metropolitan Police Department. In Poe, a declaratory judgment was sought concerning the relationship of the Sheriff's office to the Metropolitan Government in matters of duties, functions, budgeting, purchasing, and personnel policies. 383 S.W.2d at 267. Addressing the issue of whether the "criminal law enforcement powers and authority in the area of the Metropolitan Government [are] vested in the Metropolitan Chief of Police exclusively," id., we held as follows:

---

[5] See Tennessee Code 1932, §§ 11418, 11419.

It is plain to us that it is the purpose and intent of the Charter to take away from the Sheriff the responsibility for the preservation of the public peace, prevention and detection of crime, apprehension of criminals, protection of personal and property rights except insofar as may be necessary and incidental to his general duties as outlined in T.C.A. § 8-810[6] and to transfer such duties to the Department of Police of the Metropolitan Government.

Id. at 275 (footnote added).

Although we stated in Poe that the intent of the Charter was to take away from the sheriff the responsibility for the preservation of the public peace, necessarily, given the express language of the Charter, our holding can only be viewed as divesting the Sheriff of his authority as *principal* conservator of the peace. As specifically stated at Section 16.05 of the Charter, "the sheriff shall not be the *principal* conservator of peace. The function as *principal* conservator of peace is hereby transferred and assigned to the metropolitan police chief." (emphasis added). The express language of the Charter only divested the Sheriff of his authority as *principal* conservator of the peace, and it is only to that extent that his role as conservator of the peace was transferred to the Police Chief. Our holding in Poe is, consequently, so restricted. Accordingly, our ruling in Poe does not prohibit a construction of the Charter which allows the Sheriff to perform the federal immigration officer duties set forth in the MOA, when directed to do so by Metro and in the absence of action by the Police Chief.

The plaintiffs also argue that the MOA violates Tennessee Code Annotated section 50-1-101(b), which provides in pertinent part that "[i]f a memorandum of understanding with the United States department of homeland security is executed pursuant to subsection (a), municipal and county law enforcement officers shall be designated from local law enforcement agencies who, . . . shall be trained pursuant to the memorandum of understanding." The plaintiffs contend that section 50-1-101(b) directs power, authority, and duties to local law enforcement officers and that the language of this section falls within the Charter's exclusive vestment of law enforcement authority in the Police Chief. We respectfully disagree. As we have explained, the Charter does not prohibit the Sheriff from engaging in all law enforcement functions.

---

[6] Section 8-810 is now codified at Tennessee Code Annotated section 8-8-201.

The plaintiffs additionally contend that the MOA violates section 1.16.050 of the Metro Code of Ordinances, which provides in pertinent part that "[t]he sheriff shall permit the interrogation of prisoners by authorized personnel of the police department." Metro. Gov't of Nashville & Davidson Cnty., Tenn., Code of Ordinances (2012). The plaintiffs argue that this section indicates that the Police Department, not the DCSO, shall conduct interrogations of prisoners and that the MOA violates this section to the extent the MOA authorizes the DCSO to interrogate suspected aliens. We respectfully disagree. The language of this section merely requires that the DCSO allow the Police Department to interrogate prisoners in the Sheriff's custody; it does not prohibit the DCSO from also interrogating those prisoners. The plaintiffs do not cite to any other state or municipal law that the MOA allegedly violates, and we are aware of none.

We conclude that the October 2009 Memorandum of Agreement between the United States Immigration and Customs Enforcement and the Metropolitan Government of Nashville and Davidson County, by and through the Davidson County Sheriff's Office, does not violate the Charter of Nashville and Davidson County or any other state law cited by the plaintiffs. The Sheriff of Davidson County has authority under the Charter to perform the duties enumerated in the Agreement. Costs of this appeal are taxed equally to the plaintiffs, Daniel Renteria-Villegas, David Ernesto Gutierrez-Turcios, and Rosa Landaverde, for which execution may issue, if necessary.

_____
SHARON G. LEE, JUSTICE