RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0280p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PATRICK P. LUKAS, derivately on behalf of
Miller Energy Resources, Inc.,
                    *Plaintiff-Appellant*,

    *v.*

MERRILL A. MCPEAK, SCOTT M. BORUFF,
DELOY MILLER, JONATHAN S. GROSS,
HERMAN GETTELFINGER, DAVID HALL,
CHARLES M. STIVERS, DON A. TURKLESON,
DAVID VOYTICKY, and MILLER ENERGY
RESOURCES, INC.,
                    *Defendants-Appellees.*

No. 12-6285

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:11-cv-00422—Thomas A. Varlan, District Judge.

Argued: July 24, 2013

Decided and Filed: September 19, 2013

Before: SILER and COLE, Circuit Judges; DOWD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** W. Scott Holleman, LEVI & KORSINSKY LLP, New York, New York, for Appellant. Robert D. Weber, DLA PIPER LLP (US) LLP, Los Angeles, California, for Appellees McPeak, Miller, Gross, Gettlefinger, Hall, Stivers, Turkleson, Voyticky, and Miller Energy Resources. Lawrence P. Leibowitz, LEIBOWITZ LAW FIRM, Knoxville, Tennessee, for Appellee Boruff. **ON BRIEF:** W. Scott Holleman, LEVI & KORSINSKY LLP, New York, New York, Al Holifield, HOLIFIELD & ASSOCIATES, PLLC, Knoxville, Tennessee, for Appellant. Robert D. Weber, DLA PIPER LLP (US) LLP, Los Angeles, California, Lawrence P. Leibowitz, LEIBOWITZ LAW FIRM, Knoxville, Tennessee, Stephen A. Marcum, MARCUM & PETROFF, P.C., Huntsville, Tennessee, for Appellees.

_____

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

COLE, J., delivered the opinion of the court, in which SILER, J., joined. DOWD, D. J. (pp. 11–18), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Plaintiff-Appellant Patrick P. Lukas appeals the dismissal of his derivative suit on behalf of Miller Energy Resources, Inc. ("Miller").  The district court, applying Tennesee law, dismissed Lukas's derivative suit against Miller and nine of its directors because Lukas brought suit without first making a demand on the Miller Board of Directors to pursue this action, as required by Tennessee law.  Lukas argues that the district court erred in rejecting his argument that, under Tennessee law, he was excused from bringing a demand because such a demand would have been futile.  We affirm the dismissal.

I.

Lukas is a shareholder of Miller, a publicly owned Tennesee corporation "engaged in the exploration, production and drilling of oil and natural gas."  On December 16, 2009, Miller announced that it had acquired assets ("Alaska assets") worth $325 million for a cost of only $2.25 million.  Miller announced several increases in the value of the Alaska assets over the next nine months, claiming that they were worth over $1.2 billion in August 2010.  The resulting impact on Miller's financial reports led to increases in its stock price.

On December 23, 2010, Miller, in recognition of its improved financial performance, amended its employment agreement with its Chief Executive Officer, Defendant Scott Boruff, substantially increasing his compensation and giving him stock options.  The Compensation Committee (Defendants Merrill McPeak, Charles Stivers, and Herman Gettelfinger) recommended the amendment and the Board approved it.  At the time, the Board was composed of the four already-named Defendants, as well as

Defendants Deloy Miller, Jonathan S. Gross, David Hall, Don Turkleson, and David Voyticky.

In the summer of 2011, a series of revelations led Miller's stock price to decrease. A website published a report claiming that the Alaska assets—on the books for $350 million—were worth only $25 to $30 million and offset by $40 million in liabilities. Then, a series of SEC filings by Miller acknowledged "errors in . . . financial statements " and "computational errors," and advised that the misstatements "may have a material adverse effect on . . . business and stock price" and "adversely impact [Miller's] ability to raise additional capital." The stock price decreased after the website report and SEC disclosures.

On August 31, 2011, Lukas filed suit against the above-named Defendants, as well as Miller itself, in the district court, alleging six counts: (1) breach of fiduciary duty and disseminating materially false and misleading information; (2) breach of fiduciary duties for failing to properly oversee and manage the company; (3) unjust enrichment; (4) abuse of control; (5) gross mismanagement; and (6) waste of corporate assets. Defendants moved to dismiss on the grounds that (1) Lukas had not made a demand on the Miller board prior to initiating his suit and (2) Lukas failed to state a valid cause of action against any of the individual defendants. Lukas opposed the motion, arguing that demand would have been futile and that he had stated valid claims. The district court granted the motion on the ground that Lukas "ha[d] not adequately pled specific facts demonstrating that his failure to make a pre-suit demand . . . should be excused." Lukas appeals.

## II.

We "review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). We review a district court's application of state law de novo. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991)).

Defendants argue that the panel should review the district court's decision for abuse of discretion because the disposition of the motion to dismiss in this case was based on findings of fact. Defendants cite a number of cases from other circuits for the proposition that abuse-of-discretion review applies when the determination of the sufficiency of allegations of demand futility "depends on the circumstances of the individual case." *See, e.g.*, *Halebian v. Berv*, 590 F.3d 195, 203 (2d Cir. 2009); *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007). However, we have previously reviewed demand-futility issues under a de novo standard. *See, e.g.*, *McCall v. Scott*, 239 F.3d 808, 815–16 (6th Cir. 2001); *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008). We do likewise in this case.

In resolving questions of Tennessee law, this Court must first look to the decisions of the Tennessee Supreme Court. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). This Court must abide by any directly applicable holding of the Tennessee Supreme Court, unless the state court itself has "given clear and persuasive indication that its [earlier] pronouncement will be modified, limited or restricted." *Id.* Where no on-point precedent from the Tennessee Supreme Court is available, this Court must consider any available precedent from the state appellate courts, whether published or unpublished:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Id.* at 237; *see also Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000) (stating that the *West* rule applies "irrespective of whether a state appellate decision is published or unpublished"). State appellate court precedent is to be considered particularly persuasive where the Tennessee Supreme Court has refused to review the decision. *See Six Cos. of Cal. v. Joint Highway Dist. No. 13*, 311 U.S. 180, 188 (1940); *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158 n.13 (1948).

Ordinarily, a plaintiff in a shareholder derivative suit must state in his complaint that, prior to filing suit, he made a written demand on the corporation's directors requesting that they pursue the suit on behalf of the corporation or take other suitable corrective action, and that they refused or ignored his demand. *See* Tenn. Code Ann. § 48-17-401(b); Tenn. R. Civ. P. 23.06. However, Tennessee law recognizes that, in some circumstances, demand would be futile. In such cases, the plaintiff is excused from making a pre-suit demand, but the complaint must state "with particularity" why demand was futile. *See* Tenn. Code Ann. § 48-17-401; Tenn. R. Civ. P. 23.06. The contours of Tennessee's demand-futility standard are at issue in this case.

The district court held that a Tennessee appellate court had set out the "test for demand futility in Tennessee" that the district court was "bound to follow." *See Lewis ex rel. Citizens Sav. Bank & Trust Co. v. Boyd*, 838 S.W.2d 215 (Tenn. Ct. App. 1992). The district court read *Lewis* as adopting a form of the Delaware Supreme Court's two-part test for demand futility, known as the *Aronson* test:

> In demand excused cases, the grounds for the shareholder's claim are (1) that the board is interested and not independent and (2) that the challenged transaction is not protected by the business judgment rule.

*Lewis*, 838 S.W.2d at 222 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). The district court held that Lukas must meet "both prongs" for demand to be excused, and that his failure to meet the first prong—to show that a majority of directors were interested and not independent—made analysis of the second prong unnecessary.

On appeal, Lukas argues that the district court erred in applying the demand-futility standard from *Lewis* because the Tennessee Supreme Court has definitively answered the central question of state law in this case. Lukas cites *Deaderick v. Wilson*, wherein the Tennessee Supreme Court held that demand would be excused when "the corporation is still under the control of those who must be defendants in the suit." 67 Tenn. 108, 131 (1874) (emphasis omitted). Since the entire board is named in this suit, Lukas contends demand is excused under *Deaderick*.

*Deaderick* has been repeatedly affirmed by the Tennessee Supreme Court. *See, e.g.*, *Boyd v. Sims*, 11 S.W. 948, 950 (Tenn. 1889) ("[A] demand of the agents of a corporation . . . is not necessary if these agents are themselves guilty of the wrongs complained of . . . it would be contrary to justice to permit the authors of the wrong to conduct the litigation against themselves as agents of the injured party."); *Wallace v. Lincoln Sav. Bank*, 15 S.W. 448, 449 (Tenn. 1891) (noting in dictum that a shareholder can bring suit "where the managing agents of the corporation (its officers and directors) are themselves to be the defendants"); *Akin v. Mackie*, 310 S.W.2d 164, 168 (Tenn. 1958) ("[Demand] need not be made where the corporation is under the control . . . of persons who are necessary parties defendant." (quotation marks omitted)).  The Tennessee Supreme Court has never declared *Deaderick* abrogated or overruled.  We agree with Lukas that *Deaderick* remains good law, but we do not read it as holding that demand is automatically futile whenever a majority of company directors is named in a derivative suit.

*Deaderick* and its progeny leave room for the lower Tennessee courts to "expound[]," *Lukas v. McPeak*, No. 3:11-CV-422, 2012 WL 4359437, at *5 (E.D. Tenn. Sept. 21, 2012), as to the scope of the demand-futility exception by leaving important qualifying language undefined.  *Deaderick* states that demand will be excused "if the corporation is still under the control of those who *must* be defendants in the suit." 67 Tenn. at 131 (emphasis altered); *see also Akin*, 310 S.W.2d at 168 ("[Demand] need not be made where the corporation is under the control of the *wrongdoers* or of persons who are *necessary* parties defendant." (quotation marks omitted) (emphasis added)). *Deaderick* did not elaborate on how to distinguish "those who must" be defendants in the suit from those who are merely named in the suit, probably because the defendants were very specifically accused of insider trading and scheming to defraud smaller stockholders, making it obvious that they "must" be defendants.  *See* 67 Tenn. at 112. Likewise, in *Akin*, a single controlling shareholder was personally accused of covertly "deplet[ing]" the company's treasury and denying minority shareholders an accounting of the company's assets, making it obvious that he was a necessary defendant.  *Akin*,

310 S.W.2d at 168.  By contrast, it is not at all clear from Lukas's allegations why the majority of the board *must* be defendants.

In *Lewis*, a Tennessee appellate court "expound[ed]" on how to demonstrate that a defendant is truly necessary, such that demand may be excused.  The court affirmed the principle in *Deaderick*:

> Thus, the courts have excused the demand requirement when the corporation's officers and directors will themselves be defendants or when the officers and directors are in collusion with those who have injured the corporation.

838 S.W.2d at 221 (citing *Wallace* and *Deaderick*).  Shortly thereafter it stated:

> In demand excused cases, the grounds for the shareholder's claim are (1) that the board is interested and not independent and (2) that the challenged transaction is not protected by the business judgment rule.

*Id.* at 222 (citing *Aronson*, 473 A.2d at 814).  These passages in *Lewis* were only dicta. *See id.* at 224 (concluding that the "depth of review should not depend on whether or not the shareholder made a demand prior to filing suit"); *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011) (holding that a statement is non-binding dicta when it is not necessary to the outcome of a case).  However, other Tennessee appellate courts have applied some version of the *Aronson* test to plaintiffs pleading demand futility.  *See Memphis Health Ctr., Inc. ex. rel. Davis v. Grant*, No. W2004-02898-COA-R3-CV, 2006 WL 2088407, at *10 (Tenn. Ct. App. July 28, 2006); *Humphreys v. Plant Maint. Servs., Inc.*, No. 02A01-98-11-CV-00323, 1999 WL 553715, at *6–7 (Tenn. Ct. App. July 30, 1999).  Thus, the dicta in *Lewis* became case law, at least for the purpose of federal courts sitting in diversity.  *See Talley*, 223 F.3d at 328.  Lukas does not cite any post-*Lewis* Tennessee cases that flatly apply the *Deaderick* rule.

When resolving unsettled questions of state law, a federal court should attempt to make sense, not nonsense, of state courts' holdings.  *Cf. Things Remembered Inc. v. Petrarca*, 516 U.S. 124, 136 (1995) (Ginsburg, J., concurring).  In this case, Lukas invites us to find that multiple Tennessee appellate courts have repeatedly and grossly

misunderstood applicable Tennessee Supreme Court precedent, even while citing it. On the other hand, the district court's reading of *Deaderick* reasonably reconciles the lower state court decisions with *Deaderick* and its progeny. As a federal court sitting in diversity, we prefer the district court's approach, which minimizes the danger of "interrupt[ing] the orderly development and authoritative exposition of state law." *Factors, Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 282 (2d Cir. 1981); *see also Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1003 (4th Cir. 1998) ("[O]nly if the decision of a state's intermediate court *cannot be reconciled* with state statutes, or decisions of the state's highest court, or both, may a federal court sitting in diversity refuse to follow it." (emphasis added)). Accordingly, we agree with the district court that the proper demand-futility standard is the version of the *Aronson* test first mentioned in *Lewis*.

Lukas also argues, in the alternative, that even under Defendants' and the district court's preferred standard, his complaint adequately pleads demand futility and the district court erred by applying a conjunctive version of the two-pronged test in *Aronson*. He is wrong on both counts.

Although Delaware courts read the *Aronson* test as disjunctive, requiring a plaintiff to meet only one of the two prongs to demonstrate demand futility, *see Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000), *Lewis* states the rule in the conjunctive, *see* 838 S.W.2d at 222 (using the word "and" instead of "or"), appearing to require a plaintiff to meet the requirements of both prongs. The only Tennessee case Lukas cites in support of a disjunctive test applies Delaware law to a Delaware corporation. *See In re Healthways, Inc. Derivative Litig.*, No. M2009-02623-COA-R3-CV, 2011 WL 882448, at *3 (Tenn. Ct. App. Mar. 14, 2011). On the other hand, at least one Tennessee appellate court has quoted the conjunctive test from *Lewis*. *See Humphreys*, 1999 WL 553715, at *6. We have done so as well. *See McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 410 (6th Cir. 2006). Another Tennessee appellate court appears to have adopted only the first prong of the test, disinterest and independence. *See Memphis Health Ctr.*, 2006 WL 2088407, at *10 (stating that in

demand-futility cases "the court examines the interest and independence of the corporate decision-makers"). We do not need to decide between the *Humphreys* and *Memphis Health Center* versions of the test, because both require the plaintiff to demonstrate a majority of the board to be interested and not independent, a requirement Lukas fails to meet.

The district court did not err in its disinterest-and-independence analysis. At best, Lukas's allegations make out what the district court already acknowledged: that Boruff's disinterest and independence may have been compromised. However, Lukas does not allege any specifics regarding other board members and does not cite any Tennessee authority supporting his contention that board members' exposure to potential liability via allegations consisting primarily of nonfeasance—as opposed to malfeasance—should suffice to demonstrate a reasonable doubt as to independence and disinterest. *See also In re Healthways*, 2011 WL 882448, at *4 ("[W]e will not excuse demand if the complaint states claims that arise solely out of the duty of care, but may excuse demand where there are particularized allegations that the directors breached their duties of loyalty or good faith.").

Lukas points out that in *Memphis Health Center*, the court found the allegation that "Defendants have a direct interest in continuing to breach their fiduciary duty and violate the Bylaws and federal rules and regulations" sufficiently established a reasonable doubt as to independence and disinterest, so as to enable the complaint to survive a motion to dismiss. *See* 2006 WL 2088407, at *10. However, the complaint in that case identified a laundry list of specific and ongoing violations by specific board members, against whom the plaintiff sought an injunction to prevent future violations. *See id.* at *2. In this case, Lukas's allegations vis-a-vis the majority of the board are general: that they failed to prevent misconduct by Boruff and maintained inadequate corporate controls. Because Lukas's allegations are not sufficiently particularized as to most of the Board, he fails to satisfy the requirements for excusing demand.

III.

For these reasons, we affirm the judgment of the district court.

———————————

**DISSENT**

———————————

DOWD, D., District Judge, dissenting.  I respectfully dissent.

The issue on appeal is whether the district court correctly found that Plaintiff, in a shareholder derivative action, failed to adequately allege an excuse for pre-suit demand under Tennessee  Rule 23.1 and Tenn. Ann. Code § 48-17-401 (b).  The decision turns upon the question, "What is the Tennessee substantive law requirement for pleading futility of demand?"  To put the questions in terms of the parties' arguments, "Is the Tennessee law of refusal governed by older decisional law, or by a Delaware standard referenced in a Tennessee Appellate Court opinion after the legislature's adoption of Tenn. Code Ann. § 48-17-401(b)?"

The "old" law:  The Tennessee Supreme Court first addressed the issue of the test for demand futility in 1874, in the case of *Deaderick v. Wilson*, 67 Tenn. 108 (1874).  *Deaderick* held that pre-suit demand is excused when the directors and officers who would be charged with responding to such a demand had been named as defendants.  It is Plaintiff's position that *Deaderick* remains good law and therefore demand was excused in this case where all of the directors are named as Defendants.

The new law:  In *Lewis ex rel. Citizens Savings Bank & Trust Co. v. Boyd*, 838 S. W. 2d 215 (Tenn Ct. App. 1992) a Tennessee appellate court, *in dicta,*  referenced a Delaware decision, *Aronson v. Lewis*, 473 A. 2d 805, 814 (Del. 1984), which states the Delaware test for demand futility.  Defendants contend that this reference, later cases citing the *Aronson* test, and the Tennessee legislature's enactment of Rule 23.06 and Tenn. Code Ann. § 48-17-401(b), have established *Aronson* as the new Tennessee law on demand futility.[1]

———————————

[1]There also is dispute in the case as to the terms of the *Aronson* test; as interpreted by the Defendants, the *Aronson* test would require plaintiff to establish a reasonable doubt that "(1) the directors are disinterested and independent **and** (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." The test, as used in Delaware, is disjunctive, that is, a plaintiff needs to establish a reasonable doubt as to only one of the elements.

In my view the law on demand refusal in Tennessee is, at best, conflicting, poorly developed, scant, and in need of clarification by the Tennessee Supreme Court.

I.

**There is a Strong, Well-supported Argument that *Deaderick* Remains Good Law**

To make the points quickly:

- *Deaderick* has never been criticized or circumscribed by any state or federal court; it has never been overruled, or abandoned by the state supreme court. The Tennessee Supreme Court has unwaveringly adhered to the *Deaderick* rule. *See, e.g.*, *Akin v. Mackie*, 203 Tenn. 113 (Tenn. 1958).

- Tennessee appellate courts and federal district courts have continued to recognize that demand is excused when suing a corporation's directors. The Plaintiff cites four cases, including *Memphis Health Center, Inc. v. Grant*, No. W2004-02898-COA-R3-CV, 2006 WL 2088407, at *10 (Tenn. Ct. App. July 28, 2006) (excusing demand where 8 of 10 directors were named as defendants; the only demand futility allegations were that demand "would be futile in that the [board members] have a direct interest in continuing to breach their fiduciary duty and violate the Bylaws and federal rules and regulations, and therefore, are not independent.") *See also: In re Direct General Corporation Securities Litigation*, 2005 WL 1895638 *1 (M.D. Tenn. Aug. 3, 2005) (the court cites *Lewis*, but states that under Tennessee law that the demand requirement is excused "when corporation's officers and directors will themselves be defendants..." Finding that the complaint named the officers and directors and alleged breach of fiduciary duties, abuse of control, waste of corporate assets, etc., the court held the allegations sufficient to excuse demand under Tennessee law).

- Under *Erie* the district court must follow Tennessee law as prescribed by the Tennessee Supreme Court. Federal courts sitting in diversity must apply the law "as expressed by the highest court of the state." *Coleman v. Western Elec. Co.,*

*Inc.*, 671 F. 2d 980, 983 (6th Cir. 1982), citing *Clutter v. Johns-Manville Sales Corp.*, 646 F. 2d 1151 (6th Cir. 1981) This is because the highest court of the state is the final arbiter of what is state law.

- Federal courts must follow the law as pronounced by the state's high court regardless of whether the federal court agrees with such law. *Branch v. U.S. Fid. & Guar., Co.*, 198 F. 2d 2007, 1011 (6th Cir. 1952).  The age of the governing law has no bearing on its authority. As the Third Circuit explained:

  > When...there is a decision of the Supreme Court of the Commonwealth which is directly on point, we are bound by that decision.  We must follow the ruling of the highest court of Pennsylvania even if the precedent is old. We must do so even if we think that the state Supreme Court would change its mind were it ever to revisit the subject. *Brown & Root Braun, Inc. v. Bogan, Inc.*, 54 F. App'x 542, 547 (3d Cir. 2002) (quoting *Microvote Corp. v. Montgomery County*, 942 F. Supp. 1046, 1049 (E.D. 1996)).

- The *only* scenario in which a federal court may disregard the state high court's pronouncement is when that court has itself cast doubt on its prior rulings.  In this case the Tennessee Supreme Court has never cast doubt upon its ruling in *Deaderick.*

- The Tennessee Supreme Court has stated that its power to overrule its own decisions, "is sparingly exercised and only when the reason is compelling." *In re Estate of McFarland*, 167 S.W. 3d 299, 306 (Tenn. 2005).

## II.

**Lewis Did Not Overrule *Deaderick* or Purport to Set New Substantive Requirements**

A careful reading of *Lewis* demonstrates it did not overrule *Deaderick* nor presume to do so.

First, the *Lewis* case involved the propriety of dismissal of an action based on a special litigation committee's recommendation that the litigation was not in the bank's best interests.  It did not involve a derivative action.  All of the statements regarding shareholder derivative actions in *Lewis* are *dicta.*

Second, *Lewis* did not criticize or challenge *Deaderick*.  Indeed, in discussing the nature of a derivative action, generally, the *Lewis* court cited, and lauded, *Deaderick*'s rule:

> Thus, the courts have excused the demand requirement when the corporation's officers and directors will themselves be defendants or when the officers and directors are in collusion with those who have injured the corporation... *Deaderick v. Wilson*, 67 Tenn. at 130.

*Lewis v. Boyd*, at 221 (internal citations partially omitted).

The Delaware demand futility test described (but not used) in *Lewis* significantly differs from that announced in Tennessee Supreme Court decisions, and the multiple lower court decisions that relied upon *Deaderick.  Lewis*, as an inferior court, had no ability to overrule *Deaderick*, and did not purport to do so.

## III.

**Despite *Deaderick*'s Authority, Several Lower Tennessee Courts Have Relied Upon *Lewis* and Adopted Some Version of the *Aronson* Test**

Despite *Deaderick*'s continuing vitality as precedent, several lower courts have relied upon the *dicta* in *Lewis* and adopted some form of the *Aronson* test as Tennessee's test for demand futility in a stockholder derivative case.

The district court stated,  "*Lewis* appears to state the test for demand futility in Tennessee" because of its citation in *McCarthy v. Middle Tennessee Electric Corp.*, 466 F. 3d 399 (6th Cir. 2006); *Lay v. Burley Stabilization Corp.*, No. 3:09-cv-252, 2010 WL 2639931 (E.D. Tenn. June 28, 2010); *DuVall v. Ecoquest International, Inc.*, No. 4:06 CV 1168, 2007 WL 2811052 (E.D. Mo. September 24, 2007), and *Humphreys v.*

*Plant Maintenance Services, Inc.*, No. 02A01-98-11-cv-00323, 1999 WL 533715 (Tenn. Ct. App. July 30, 1999).

Despite this caselaw, there are arguments this handful of cases did not overturn *Deaderick*:

Again, to put each matter briefly:

• The repetition of the incorrect legal standard does not lend credence to a non-binding and inapposite decision.

• None of these cases acknowledged or discussed *Lewis* as a substantial departure in Tennessee law. The limited analysis of these cases "means they are without a great deal of value as persuasive authority." *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics Inc.*, 819 F. Supp. 2d 230 (S.D.N.Y. 2011).

• *Lay, DuVall and Humphreys* are unpublished opinions and have no precedential value. *Patton v. McHone*, 822 S.W.2d 608, 615, n.10 (Tenn. Ct. App. 1991) (an unpublished opinion of a Tennessee Court of Appeals has no precedential value except to the parties in the case).

• The citation to *Lewis* in several of these cases is only in *dicta*–e.g., in *McCarthy*, *Lewis* is only cited for the proposition that shareholders should make a pre-suit demand; in *Humphreys*'s the complaint was dismissed because it was unverified.

**IV.**

**Defendant Introduces a Novel Argument Regarding Statutory Interpretation: That the Enactment of Tennessee's Rule 23.06 and Tenn. Code Ann. § 48-17-401(b) Abrogate or Modify the *Deaderick* Rule**

In their appellate brief, Defendants argue for the first time that the Tennessee legislature's enactment of Rule 23.06 and Tenn. Code Ann. § 48-17-401(b) abrogated the *Deaderick* holding, altering the substantive law of Tennessee. Defendants cite no legislative history in which *Deaderick* is mentioned. Defendants cite no case holding that these code sections alter Tennessee's substantive law on demand refusal. The Tennessee Supreme Court has not addressed the issue. This novel argument creates a

question of first impression in the interpretation of these state statutes, and addresses it to a federal court.

There is a strong argument that the adoption of these code sections did not create a conflict with pre-existing Tennessee law. As the Supreme Court explained in *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 108-109 (1991), Federal Rule 23.1, which requires statement "with particularity" of efforts to obtain the desired action from the directors and "the reasons for not obtaining the action or not making the effort" does not define the substantive contours of the demand requirement. Tennessee Rule 23.06 is identical to the federal rule. Similarly, § 48-17-401(b) only requires that a plaintiff in a derivative action "allege with particularity that demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the person did not make the demand." These statutes specify the degree of particularity with which a plaintiff in a derivative action must allege the requirements of the state substantive law on demand, but they did not specify *what* the state requirements must be.

Defendants cite no case law authority discussing the relationship between Tennessee Rule 23.06 and § 48-17-401(b). The only authority discussing the relationship between these statutes and *Deaderick* that has been located, is the *Lewis* case, relied upon heavily by Defendants. *Lewis* described the *Deaderick* holding as consistent with—indeed, embodied in—Tennessee's corporations statute § 48-27-401(b) and Tennessee's Rule of Civil Procedure 23.06. Thus, far from finding that these later statutes modified or repealed the substantive requirements established by the decisional law, the *Lewis* court found them to be expressed in the later statutory enactments. But, concededly, *Lewis* did not undertake an extended analysis of the relationship, and as with all of the statements regarding derivative actions in *Lewis*, the court's statement is *dicta.*

**V.**

**Because of the Conflicting and Scant Case Law The Question of the Substantive Requirements for Demand Futility in Tennessee Should be Certified to the Tennessee Supreme Court**

Only two things are absolutely clear: 1) no Tennessee court has undertaken a thoughtful, sustained analysis of the relationship between *Deaderick* and *Aronson* or *Deaderick* and Tennessee's corporations statute § 48-27-401(b) and Tennessee's Rule of Civil Procedure 23.06, and 2) the question of the substantive requirements of Tennessee's demand futility test is exclusively a matter of state law.

When a new and unsettled question regarding state substantive law and state statutory interpretation is presented, particularly where there is insufficient well-reasoned authority state law authority to allow the federal court to make a clear and principled decision, it is appropriate to refer that question to the court that is the ultimate authority on Tennessee law: the Tennessee Supreme Court.   *American Bookseller's Foundation for Free Expression v. Strickland*, 560 F.3d 433, 446 (6th Cir. 2009).

The United States Supreme Court has recognized that "certification of novel or unsettled questions of state law for authoritative answers by the State's highest court...may save 'time, energy and resources and help build a cooperative judicial federalism.'" *Arizonans for Official English v. Arizona*, 520 U.S.43, 77 (1997) *citing and quoting Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).  As the Tennessee Supreme Court said in 2012, "[A]nswering certified questions from federal courts promotes judicial efficiency and comity and also protects this state's sovereignty." *Renteria-Villegas v. Metropolitan Government of Nashville and Davidson County*, 382 S.W. 3d 318, 320 (Tenn. 2012), *citing Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 516, 521 (Tenn. 2006).  The Sixth Circuit has identified still another advantage to certification: referral of uncertain question of state law to the state supreme court "avoids the potential for friction-generating error." *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F. 3d 406, (6th Cir. 2008)

Rather than trying to predict how the Tennessee Supreme Court would rule, I recommend this court *sua sponte* certify to the Tennessee Supreme Court, under Rule 23 of the Tennessee Supreme Court Rules, the questions posed initially: What is the Tennessee substantive requirement for pleading futility of demand? Is it governed by *Deaderick*, by a Delaware standard referenced in a Tennessee Appellate Court opinion after the legislature's adoption of Tenn. Code Ann. § 48-17-401(b), or some other test? Only the Tennessee Supreme Court can provide an authoritative answer to these questions, and it should be allowed to do so.